May it please the Court. My name is James Back and I represent the appellant, Randall Davis. I'd request to reserve three minutes for rebuttal. All right. Watch your time. Your Honors, there are two main issues before the Court today. The first issue is whether the district court erred in dismissing all of the claims except the Title VII claims on the basis of collateral estoppel. The second issue is whether the district court erred in dismissing the Title VII claim based on statute of limitations. Taking the first issue, collateral estoppel, there's several elements that must be shown before collateral estoppel would be applicable. One, there has to be identical issues between the proceeding that's having the collateral effect as well as, number two, you have to have final judgment or determination on the merits of the case. Three, you have to have privity between the parties. Four, you need to have a situation where injustice would not occur from this application. And fifth, you must have access to judicial review. Now, there's several of these issues that are before the Court. Kind of the catchall is the injustice, and that's definitely present in this case, but there's two more specific of the elements that go directly to the points of the case. I understand your client's, the general description of your client's claim. It's that he is as or better qualified than other people who have received this reallocation. Is that, do I have it right? That's, in essence, correct, Your Honor. The additional element would be is he is, in fact, doing the same work as those other individuals. So not only is he qualified, but he's been doing the same thing for quite a considerable amount of time. Did the board, this administrative agency, have the ability or take the opportunity to conduct a comparative analysis? No. And it, by the terms, if you go back isn't that the best reason to not apply collateral estoppel? I believe so, Your Honor. It's one of the two that seem kind of white and black. And that's the, it has to be identical questions that were resolved. There's two independent reasons why it wasn't the identical issue. One that you've addressed already, the Personnel Appeals Board decision expressly states in the findings that they're not doing a comparative analysis, which is the discrimination claims, all of which Mr. Davis was making. So clearly, they weren't engaging in the same question. Now, along those same lines, but somewhat distinct, is if you look at the analysis of the Personnel Appeals Board, the basic question of the determinative factor was whether Gordon White, his supervisor, had signed a piece of paper and put it in his file saying he's an EP4, Environmental Planner 4. If he had the piece of paper, the Personnel Appeals Board would rule in Mr. Davis's favor. If he didn't have it, then they rule against him. It's that simple. That's not what would be decided at the district court level. At issue is why has Mr. White, his supervisor, refused to fill out one of these clear forms that designates him. Done it for comparators, but not for Mr. Davis. And so on the issue of whether the identical questions were presented, they weren't, and so it was error to apply collateral estoppel. The second reason is also that there was no judicial review. I think that reason is just as black and white as the first, honestly. The statute that's at issue that gives the procedures for administrative proceedings states unequivocally that you cannot seek judicial review of the decision. The word or the worldly case was issued by this court, and it's exactly the same. There was an Orange County, there was a deputy for the courthouse who, it was a fitness issue, and he went through an administrative proceeding, and then later it was appealed. Well, there was a later lawsuit flowing out of some of the determinations. There, there was a statute in place in California stating that you could not seek judicial review of the determination of an administrative body. Identical language to this case, the statute in this case. This Court said, no, you must seek judicial, you must have the ability to seek judicial review. Your opponent, as I understood the brief, says that there was administrative review. What's your response? Well, my response is twofold. First, what this Court stated expressly is it's not administrative review, but it's judicial review. And the question really comes down to who are you having look at what happened? Is it another executive branch agency? Or do you finally get a chain of appellate review, as this Court indicated in a later case, the Communications Telesystems case, which was one that just basically reaffirmed the Worrell case and cited to the Third Circuit Crossroads case, stating that it's the chain of an ability to appeal, so that you can get into the court system, have an independent body look at what happened. And so I understand the State's argument on that point, but it doesn't square with the decisions from this Court that say judicial review, and it doesn't square with the concept of the need to have a truly independent body looking at it. Did you find in your research any case makes that distinction between administrative review and judicial review? No, I have not. But at the same time, Your Honor, the State has not cited any case where there's a statute that says you can't have judicial review, and there's collateral estoppel apply. So, frankly, it hasn't come up where you would even need to argue it. So another point on the collateral estoppel, which I believe is important, is the question of what would Washington State courts do? Considerably, with the Washington Law Against Discrimination claims, which are substantially similar to the other claims asserted by Mr. Davis, the State in its briefing has argued that Washington courts would apply collateral estoppel in this circumstance. That's incorrect. The case to look at to determine whether Washington courts would apply collateral estoppel is the Shoemaker case. It was certified by this Court to the Washington State Supreme Court. It was a situation where a sheriff's deputy or a sheriff's employee for the city of Bremerton made some findings or did make some statements during a proceeding, and he claimed retaliation after making those. There was an administrative review there, and it allowed for him to go to court. In fact, he went to court. He went to Kitsap Superior Court and appealed the decision. So the facts of the Shoemaker case show that there was judicial review and it was exercised. Importantly, the State Supreme Court didn't just put that in the facts section. It was part of the crucial piece of analysis to determine whether or not collateral estoppel should, in fact, apply in that case. The Court said here Shoemaker had the ability and acted on the ability to seek judicial review. That's not the circumstance in this case. Neither this Court nor the Washington courts should, under the prior precedent, apply collateral estoppel. Now, the second issue deals with statute of limitations. Now, the State has also made in their briefing before both the district court and this Court a request that all of Mr. Davis's claims be barred by the statute of limitations. Now, there's a distinction, obviously, between the Title VII claims, which have a 300-day statute of limitations, and all of the other claims which have a three-year statute of limitations. I think the argument that the three-year statute of limitations causes of action should be dismissed on statute of limitations ground is dealt with easily. What's the last discrete act of discrimination that you claim, and when did that occur? October 22nd. Well, it would be actually the State of Washington's decision with the Personnel Appeals Board, which was not final until December of... December 503 is the final decision of the DAB. Correct. So that's the last. So you're saying that was the last discrete act of discrimination? In moving back in time, yes, Your Honor. Yeah. Okay. So, and when did you file your complaint? With the EEOC or with a lawsuit? With a lawsuit. It was filed on August 18th, 2004. So you don't have any problem with the three-year statute of limitations there? No. And, in fact, it would go all the way back to August 18th of 2001, which would incorporate and consume the entire reallocation request that was made in February of 2002, and everything flowing from that. It would incorporate when Gail Bloomstorm refused to recommend a denial of his request for reallocation. It would incorporate Gordon White's decision on August 5th of 2002 to recommend that it's denied, as well as Ecology's decision to deny it, as well, that was on the same date of August 5th. So you're alleging that each time his complaint was or his request for EP4 status was denied, no matter by any representative of the state at any level, that's a discreet act of discrimination? Yes, Your Honor. And there's claims against individual state actors in this case who acted at a certain place in time, affirmatively acting to work against Mr. Davis' request for reallocation. But I guess when you say that the, okay, the board, all the, you're not alleging that the board acted with discriminatory motives. No, but it was not final until that point. It was a decision on whether or not he would have reallocation was final until the board's decision. It would have been not right yet, because the board could have gone your way. Could you repeat the question? It couldn't ensue until the, you're suggesting, maybe I've got it wrong, but until the PAB entered its final decision, your suit wouldn't have been right to file, because the PAB could always have gone your way. Well, it's quite possible that it would have. And, in fact, the hearing examiner, Paul Peterson, a while back, did go with Mr. Davis, determining that he, when he did do a review of analogous positions and said, hey, Mr. Davis looks like he's doing environmental plan or four works, so I'm going to reallocate him. So that's right. Now, so the question on the three-year statute of limitation claims should be easily dealt with. The district court was not persuaded by that argument and didn't find that those were barred. The Title VII claim, the finalization of the personnel appeals board falls within 300 days of the formal complaint, which was in June of 2003. Additionally, the Ms. Gail Blomstrom, in October of 2002, went and lobbied against Mr. Davis during that period of time. So those are discrete acts that go within it. We filed a motion, and we would also request that the court remand for a factual determination of when a questionnaire was filed. I understand that this is a somewhat unusual request, but at the time that Mr. Davis was responding to the summary judgment motion, the law in this circuit and the EEOC had interpreted Title VII to allow for every time you're paid less than someone who's doing the same work based on your race, that receipt of pay to be actionable. That's what he proceeded under and believed his formal complaint to be enough and sufficient to survive summary judgment on the statute of limitations. I'll reserve the rest of my time. Thank you. May it please the Court. My name is Lisa Sutton, and I am senior counsel with the Washington State Attorney General's Office, and I'm here representing today defendants' appellees. And it's my pleasure to be here arguing before you today. The focus of my argument is to ask this Court today to affirm summary judgment and dismissal of all claims. I'm going to focus my attention on the impact of the recent Ledbetter decision, specifically as it relates to the Title VII claim, answer your questions, and with time remaining, address the 1983-1985 and the State 4960 claim. This Court asked for supplemental briefing on the impact of Ledbetter, and that is a significant decision on Randall Davis's Title VII claim. It's our position that that claim is entirely time-barred. And importantly, the Title VII claim is not against the individual defendants. And so none of the individual defendants' participation in an appeal process, to include even arguing before the Ninth Circuit, could form the basis for liability under Title VII. Title VII is only an action against the State. Well, according to you then, what do you characterize as the last discreet act of alleged discrimination? The last discreet act under the Ledbetter decision is when there's a pay-setting decision. And here, the particular point in time and the particular employment practice that was challenged was the August 8, 1995, assignment of Randall Davis of job duties as a Planner III. I don't read Ledbetter that way. I don't read Ledbetter that way. I think maybe reading it in the light most favorable to your opponent for the minute. Ledbetter would say, I think, that it would be triggered by each denial of his request for pay, because that's a decision that was made. And from my reading of the record, he did, on more than one occasion after 1995, ask to have his EP4 letter put into his file, and he was rejected. Now, I'm not sure I buy that every time the State, you know, disasserted its same position in response to the Personnel Board or whatever, that that would be a discreet act. But at least what each separate denial of his request would count, because it's a new request, and it's, you know, presumably new facts, different work, more work, more time spent. So I don't know when that last denial of his request for an EP4 was. There are certainly a lot of dates in this record. I would acknowledge that. Many, many dates, and the arguments have shifted depending on what the focus is. It was our position in the supplemental brief that we filed at the Court's direction that the Court would look at the initial assignment date, and it's the August 5, 1995. But to answer directly your question to me, the majority rejected Ledbetter's decision that every paycheck under a facially ---- Yes. Fred Ledbetter. I mean, we know what Ledbetter said. But in your case, what was the last decision not to, within his department, not to deny? When was the last time his request was denied? The last time that Ecology denied Randall Davis's request for an upgrade to Planner IV duties was August 5, 2002. That led to him appealing once again to the Washington State Personnel Appeals Board. Now, unlike Ledbetter, or actually similar to Ledbetter, here Randall Davis's job duties have never changed. He is still in the same job that he was always assigned as of August 1995. So unlike perhaps other cases where a renewal of a request for upgrade may be a discreet act, here, I think under these facts, there was no new decision that would form the basis for a separate discreet act, thus re-triggering the charging period for the EEOC. But why not? Why wouldn't ---- I mean, if you have an employee and you're dealing evenhandedly with this employee, and he comes to you and he says, okay, it's been another two years, and my job responsibilities are clearly the same as X, Y, and Z's over there, and I've demonstrated another two years of experience or whatever, aren't you making a new decision to say, no, we don't think that you deserve the EP4 letter, we're going to keep you at EP3? Here, based on this record, I don't think it's a new decision. What Mr. Davis was doing was simply renewing the same old request based on the same evidence. Nothing had changed. He never asked for nor has actually assigned higher-level duties. Although he continues to assert in the briefing and in the record that he is, in fact, indeed performing Planner 4 duties, nobody with the exception of a single DOP, Department of Personnel individual, ever agreed with him. And what the record clearly shows at SER 539 is that others who perform Planner 3 duties similarly asked to be upgraded, and for the reasons given also to Randy Davis, they were denied. They were denied because, number one, they weren't performing the higher-level duties, which are senior-level duties of individuals who can speak for the Director of the Department of Ecology and make policy, and there was no business need. In fact, what the record clearly shows is that the number of planners has decreased overall since this initial classification in 1992, and specifically, the number of Planner 4s has decreased. This goes to show that Ecology did not have a business need, nor do they today have a business need for increased Planner 4s. The reason why also is that the majority of their work is working with local governments to help them draft and pass the shoreline management's plans and the updates. When was the last time an EP3 was realigned to EP4? The last time there were several individuals that were upgraded all around the same time in 1994, and the best summary of that is SER 706 to 742, and that's found at the State's original brief, page 47, footnote 47, and there what we did was we outlined what the reasons were, who the people were that justified the upgrades to EP4. About that time, Ecology had an upswing in the need for the higher-level Planner 4 duties. That was about a year before Randall Davis started in his assignment as a Planner 3. Also what the record shows is that the two closest comparators to Randy Davis, Sandra Lang and a gentleman by the name of Mr. Fritzen, Sandra Lang herself asked for an upgrade after Randy Davis did. She, like Randy Davis, was denied a reallocation or an upgrade because the Personnel Appeals Board said applying the same criteria to Ms. Lang in 1995 when she appealed said, you perform duties of a Planner 3. Therefore, you are properly allocated to a Planner 3 job, and that's found at State's brief, page 43, our original brief, footnote 42, is where we discussed the comparator, Lang. So it's been 14 years since anyone was reallocated from 3 to 4? That's correct, based on this record. Is that okay? So explain the distinction. You say that no one's been increased, that Bollinger did receive her letter in 2002, correct? Ms. Bollinger was originally – that's actually a misstatement of the record. Ms. Bollinger was originally upgraded, as was the other three people in 1994. That's found at SCR 562. What ordinarily happens is Gordon White, who's a named defendant, he's the program manager, he regularly reviews the positions that report to him. And he reviewed Ms. Bollinger's and the others to say, based on the job duties that they're doing today in 2002, is she and the others who were 4s correctly allocated as a 4? And that review that was signed by Gordon White is found at SCR 717 to 718. So the record reflects that her written designation was signed on August 9, 2002, right? No. That's what Randy Davis continues to represent, but that's not accurate. Her original upgrade, approval to be a 4. You're saying she had it. Isn't the PAB, what they're saying, is that you need that written slip of paper to really be considered an AP4? Ms. Bollinger did have it back in 1994 or 95, and it was signed by her then-supervisor, Greg Cerle, and that's at the record SCR 562. Mr. Davis, throughout this record and to the EEOC, continued to represent incorrectly that Ms. Bollinger, when she was initially placed as a planner 4, did not have a written designation, and that's not accurate. Okay. So we are kind of off into the narrows now, and the only two issues, we have the summary judgment in front of us on two grounds. We have the collateral estoppel and the Title VII and statute of limitations issues. Correct. So the reason why Leadbetter is important is because we need to figure out when the last discrete act of alleged discrimination took place so that we can then count and figure out whether it's time barred or not time barred. Correct. Okay. So your position is the last act, the last thing that you did that could be characterized as an act of discrimination is? In response to your prior question, the last actual act that Ecology made was to deny once again Randall Davis' request, which was on August 5th, 2002. But our real argument is just because he renews his request, which he did again and again, it doesn't toll the statute of limitations. Why do you think that's the same as a paycheck? Because the initial review of Randall Davis' job duties and determination by Ecology as to whether or not he was a Planner III or Planner IV was made in March of 1996, and then again it was made in December 13th, 2002, when he again asked, am I doing a Planner IV or am I doing a Planner III job duties? Ecology once again said, the Human Resource Office said, you are doing a Planner III job duties and you're properly allocated and paid as such. He then appealed, we know, to the Personnel Appeals Board, who agreed that you're performing Planner III duties, not Planner IV. And it's Ecology's position that once the quasi-judicial body, who's the Washington State Personnel Appeals Board, they were acting as an appellate role at the time, reviewing the Department of Personnel's decision. Once they issued the order that said that Randy Davis properly performs Planner III duties, Ecology was bound by that and must pay Randy as a Planner III, and they did so from that point forward. And what date was that? That date was December 13th of 2000. So it's our position to answer your question, and I hope I have, that when Randy Davis again asked in 2002, and Ecology once again said on August 5th, 2002, no, you're a Planner III, just like you were before, nothing's changed, that that doesn't then re-trigger a new charging period, and thus his Title VII claim is time-barred regardless of the dates. Let's assume, for the purpose of the question I'm about to ask, that putting collateral estoppel aside, that Davis has in fact filed a timely claim. I know you don't agree with that. I just assume for my question that he has. Is there anything wrong with a court looking back five or seven years in terms of equal protection analysis? Anything wrong with looking back in the past to people who have been reallocated from EP3 to EP4, even outside the statute period? I'm not aware that he actually filed an equal protection claim, but if you were to examine the record here, I think you would find Mr. Davis was treated the same as the others who performed the same job duties. I'm not making any comment on the merits. I'm just saying if somehow one gets past collateral estoppel, past statute of limitations, and there is in front of us a timely claim made at a fixed period in time, for the purpose of analyzing the merits of that claim, is there anything wrong with a court looking back four, five, six, seven years to determine whether lesser or equally qualified people were reallocated? I don't think so. On this record, although it's not a hostile work environment claim, which in a continuing violation sense under Morgan you would look back, it might explain some of the history, because those early decisions were made so long ago in 1994. There's also additional basis to dismiss the remaining claims, 1983, 1985, and the state anti-discrimination claim based on statute of limitations, as well, the three are statute of limitations. And if this Court gets to the additional claims, addresses them, it's our position that qualified immunity applies to the 1983 and 85 claims. You didn't appeal that denial, and I don't know if you could, actually. But you didn't appeal that. So you can't. That's not before us. All right. I actually thought we did. I'm sorry. No, you had to notice it across appeal, and then you would do it. Okay. Oh, that's right. All right. And then on the merits on the disparate treatment claim, there is no evidence that Randall Davis was treated any differently than his true comparators, those performing planner three duties. There's no evidence in the record, even if one goes back in time beyond three years of pretext or a motive to discriminate. None of those that asked for an upgrade were approved, and that was five individuals by the same supervisor here, Defendant Gordon White. The business needs are legitimate, nondiscriminatory reasons for why Randall Davis was assigned planner three duties consistent with what the ecology needed. Let me ask this. Since Mr. Davis became employed, has anyone been reallocated from three to four? Not since the last round in 1994. Well, you told us earlier, I think, that he wasn't even employed then. He was employed in other capacities. But at the time he became a three was August of 1995. Since he became an EP3, has anyone been reallocated from three to four? Not in the program in which he works in Shorelines Management. So if this Court does address the merits under the disparate treatment and reaches We can't address the merits in your regular time, so thank you. The defendants would ask that the Court affirm summary judgment and dismissal. Okay. Thank you. You have 10 minutes left. And I'm still having a hard time getting my finger on the actual day. I know the district court said in its Title VII claim, the district court found that an independent discriminatory act was alleged by the denial of his request on August 5, 2002. So do you think that's the operative date? And if not, why? Your Honor, I do not think that is the last one. I think it is a date, but it's not the last one in time. So I'd like to start with the answer like that. And I think it would be easier to clarify a couple of the pieces in the record. If you look, I'd like to point the Court to the SER 723. You'll find that that is Wendy Bollinger's signed reallocation. I mean, it's an allocation of positions. The way the state system works is you may move from one branch to another. And when the state hesitated asking your question about when's the last someone's been allocated, she was after he was denied a couple days later. So there's a date stamp of August 13, 2002, regarding Wendy Bollinger signed the 9th by Gordon White. That is an allocation, a determination by him that she is performing the duties of an EP4. So, Your Honor, the August 5, 2002 date was what the district court found as the last date. I would agree that that is a date, but it's not the last one. Okay. When is the last one? The date would be the finalization of the Personnel Appeals Board. Now, why would that be an act of alleged discrimination? Because even though it was put into motion earlier, it didn't become final until that point in time. But you're not arguing that the you're not suing the PAB, are you? No. We're suing the State of Washington, but not the PAB Administrative Agency in particular. So there's other the August 5, the October 22 date when Ms. Blumshorn was arguing against him. One last point. Sandra Lange occurred after Mr. Davis, and so it's not relevant to looking at his circumstance. His own supervisor, Steve Craig, testified at ER 351 that Mr. Davis is, in fact, doing work that's similar or is an EP4 work. Thank you. Thank you. Thank you, counsel. The case of Davis v. Washington will be submitted and the session of the court is adjourned for today. All rise.
judges: Alarcon, Hawkins, Wardlaw